**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STANLEY BLACK & DECKER, INC., THE BLACK & DECKER CORPORATION, and BLACK & DECKER (U.S.) INC. | Case No. 1:26-cv-01387 |
| Plaintiffs, | Judge Mary M. Rowland |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

# MEMORANDUM OPINION AND ORDER

Plaintiffs Stanley Black & Decker, Inc., The Black & Decker Corporation, and Black & Decker (U.S.) Inc. ("SBD") bring an action for violations of the Lanham Act, 15 U.S.C. § 1114, *et seq*. SBD moves for a preliminary injunction. [30]. Defendants Super Hardware Factory ("Super Hardware") and Tire Inflation S ("Tire Inflation") (together, the "Opposing Defendants") oppose and move to dissolve the temporary restraining order. [38]. For the reasons explained, the motion [30] is granted as to the Opposing Defendants and the motion to dissolve the temporary restraining order [38] is denied as moot.

## I. Background[1]

[1]The facts herein are taken from SBD's Complaint [1], motion for entry of a temporary restraining order [13], motion for preliminary injunction [30], reply brief [58], the Opposing Defendants' opposition brief [38], and the exhibits, declarations, and attachments accompanying those filings. The Court makes "factual determinations on the basis of a fair interpretation of the evidence before the court." *Darryl H. v. Coler*, 801 F.2d 893, 898 (7th Cir. 1986). Yet these findings are preliminary and "do not

SBD manufactures and sells a variety of tools, batteries, accessories, and clothing related to the SBD brand (collectively, the "SBD Products"). [15] ¶ 6. SBD is the owner and rights holder of several federally registered trademarks, including "XR" (the "XR Trademarks"), and maintains the exclusive rights to sell the SBD Products in connection with the XR Trademarks. *Id.* ¶¶ 8–11; [15-1].

Super Hardware sells power-tool products on Temu, some of which reference "XR" (the "Super Hardware Products"). [16-9] at 32–48. Below is a screenshot of a Super Hardware Product as it appeared on Temu on November 4, 2025:




*Id.* at 33.

Tire Inflation also sells products on Temu, some of which reference "XR" (the "Tire Inflation Products") (together with the Super Hardware Products, the "At-Issue Products"). [16-10] at 1–20. Below is a screenshot of a Tire Inflation Product as it appeared on Temu on November 4, 2025, as well as an image of the physical version of the Tire Inflation Product.

---

bind the district court as the case progresses." *Mich. v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011).







[16-10] at 2, 9.

On February 6, 2026, SBD filed this action alleging, among other things, that the Opposing Defendants used the XR Trademarks in commerce without authorization. [1]. On February 11, 2026, SBD moved *ex parte* for a temporary restraining order ("TRO") [13], which this Court granted on February 12, 2026. [19]. On March 2, 2026, SBD moved to convert the TRO into a preliminary injunction. [30].

## II. Legal Standard

"To obtain a preliminary injunction, a plaintiff must show that it is likely to succeed on the merits, and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without the injunction." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). If the plaintiff makes this showing, the Court balances "the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one." *Id.* The Court also considers the public interest. *Id.*

## III. Analysis

### A. Likelihood of Success on the Merits

To prevail on a Lanham Act trademark infringement claim,[2] a plaintiff must establish that (1) it has a protectable trademark; (2) the defendant is not authorized to use the mark; and (3) the defendant's use of the mark is likely to cause confusion among consumers. *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, No. 16-CV-05314, 2016 WL 11940344, at *1 (N.D. Ill. Sept. 6, 2016).

The first two elements are satisfied. Registration of the XR Trademarks is *prima facie* evidence of their validity and SBD has not authorized the Opposing Defendants to use the XR Trademarks. [15] ¶ 17; *Walgreen Co. v. Walgreen Health Sols., LLC*, No. 23-CV-17067, 2024 WL 4278101, at *4 (N.D. Ill. Sept. 24, 2024).

The third element is also satisfied. The Seventh Circuit utilizes a seven-factor test to determine whether consumers are likely to be confused: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by

[2]SBD also brings false designation of origin claims, which involve the same elements. *KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005, 1012 (N.D. Ill. 2014).

consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No single factor is dispositive, and courts may assign varying weight to each of the factors depending on the facts. *Id.*

The first factor asks whether "the viewer of an accused mark would be likely to associate the product or service with which it is connected with the source of products or services with which an earlier mark is connected." *Id.* at 930 (citation omitted). "The court should therefore consider whether the customer would believe that the trademark owner sponsored, endorsed or was otherwise affiliated with the product." *Id.* (cleaned up). The Court finds that a reasonable consumer would associate the At-Issue Products with SBD. On the At-Issue Products, the term "XR" appears prominently and in a position where a reasonable consumer would ordinarily expect a brand name to be located. And while the Super Hardware Products also contain the mark "Hanwise," due to the location and stylized use of "XR" on the Super Hardware Products, an ordinary consumer could still very well believe that SBD was associated with the Super Hardware Products or that SBD "had licensed [Super Hardware] as a second user." *A.T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689, 692 (2d Cir. 1972); *A.J. Canfield Co. v. Vess Beverages, Inc.*, 612 F. Supp. 1081, 1091 (N.D. Ill. 1985) ("Vess's use of its own VESS housemark in conjunction with Chocolate Fudge is not a defense to Canfield's infringement claim, for the use of another's trademark constitutes infringement with or without the use of the infringer's housemark."). This factor favors SBD.

The second factor asks whether the parties' products "are the kind the public might very well attribute to a single source (the plaintiff)." *AutoZone*, 543 F.3d at 931 (citation omitted). The At-Issue Products are power tools. [16-9] at 32–48; [16-10] at 1–20. SBD also sells power tools. [15] ¶ 8. This factor favors SBD.

The third factor asks "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *AutoZone*, 543 F.3d at 932 (citation omitted). The Opposing Defendants sell the At-Issue Products online. [16-9] at 32–48; [16-10] at 1–20. SBD sells the SBD Products online and through authorized retailers. [15] ¶ 8. Thus, both parties target the same customer base: people looking to purchase power tools online. The third factor favors SBD.

As to the fourth factor, "[t]he more widely accessible and inexpensive the products … the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *AutoZone*, 543 F.3d at 933 (citation omitted). The At-Issue Products are widely accessible for anyone to purchase on Temu and are sold for less than $50. [16-9] at 33; [16-10] at 2. This factor favors SBD.

For the fifth factor, "[t]he stronger the mark, the more likely it is that encroachment on it will produce confusion." *AutoZone*, 543 F.3d at 933 (citation omitted). The XR Trademarks have been used for years, are globally recognized, and SBD spends millions dollars annually marketing and promoting SBD Products that bear the XR Trademarks. [15] ¶¶ 9–14. This factor favors SBD.

The sixth factor asks whether there is any evidence of actual consumer confusion. Neither party presents evidence of actual confusion. This factor is neutral.

The seventh factor asks whether the defendant attempted to pass off its product as having come from the plaintiff. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 731 (7th Cir. 2015). Passing off is a type of fraud in which the defendant "tr[ies] to get sales from a competitor by making consumers think that they are dealing with that competitor, when actually they are buying from the passer off." *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 940 (7th Cir. 1986). As SBD presents no evidence of intent here, the Court will not consider this factor. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 961 (7th Cir. 1992) ("[a] defendant's intent is relevant to the issue of likelihood of confusion only if he intended to palm off his products as those of another, thereby profiting from confusion.") (quotations omitted).

In sum, five factors weigh in SBD's favor, and no factors weigh in the Opposing Defendants' favor. Therefore, on balance, the Court finds that SBD has shown a likelihood of success on its trademark infringement claim.

The Opposing Defendants nevertheless maintain that SBD cannot show a likelihood of success because the doctrine of "fair use" bars SBD's trademark infringement claims. Fair use is an affirmative defense. *MacNeil IP LLC v. Harbor Freight Tools USA Inc.*, No. 24-CV-03767, 2026 WL 800160, at *4 (N.D. Ill. Mar. 23, 2026). This means that to defeat SBD's request for a preliminary injunction based on such defenses, it is the Opposing Defendants—not SBD—who bear the burden of showing likelihood of success on the defense. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006).

The Opposing Defendants have not met their burden. To prevail on a fair use defense, a defendant must show that: (1) it did not use the mark as a trademark; (2) the use is descriptive of its goods or services; and (3) it used the mark fairly and in good faith. *Sorensen*, 792 F.3d at 722. At a minimum, the Opposing Defendants fail prong one: they have not shown that they utilized the XR Trademarks in a non-trademark manner. As shown above, the At-Issue Products utilize "XR" in its registered stylized form, not the letters "X" and "R" in descriptive text. Utilizing a trademark in its registered, stylized form suggests a trademark use, not descriptive use. *See World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831, 843 (N.D. Ill. 2002) ("By using the stylized form of the word 'Disneyland' … rather than a plain rendition of the word 'Disneyland,' plaintiff does more than simply identify Disneyland's location on a map. Instead, it implies that Disney sponsored or endorsed its maps.").

In sum, SBD has demonstrated a likelihood of success on the merits of its trademark infringement claim, and the Opposing Defendants have failed to demonstrate likelihood of success on the merits of their affirmative fair use defenses.

**B. Irreparable Harm**

SBD has sufficiently demonstrated irreparable harm. For preliminary injunctions based on Lanham Act trademark infringement claims, the plaintiff is "entitled to a rebuttable presumption of irreparable harm upon a finding … of likelihood of success on the merits." 15 U.S.C. § 1116(a); *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 805 (7th Cir. 2002) (there is a "presumption that trademark dilution or

infringement threatens irreparable injury for which there is no adequate remedy at law."). As SBD has demonstrated a likelihood of success on the merits of its trademark infringement claim, it is entitled to the presumption.

The Opposing Defendants nevertheless aver that there is no irreparable harm because SBD discovered the infringement in November 2025 and yet delayed filing this action for months. A three-month delay, however, is not unreasonable under these circumstances and does not defeat SBD's presumption. Nor does the Opposing Defendants' assertion that they have since ceased infringing activity. *See Flava Works, Inc. v. Gunter*, 689 F.3d 754, 762 (7th Cir. 2012) ("cessation of an unlawful practice doesn't exonerate a defendant, since unless enjoined he might resume infringing.").

**C. Balance of Harms**

The balance of harms supports a preliminary injunction. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Nirvana, L.L.C. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 21-CV-01983, 2022 WL 22886568, at *2 (N.D. Ill. Mar. 1, 2022) (citing *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994)). This is because a defendant "who adopts the mark of another for similar goods acts at his own peril, since he has no claim to the profits or advantages thereby derived." *Id.* (citing *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992)).

In opposition, the Opposing Defendants contend that the preliminary injunction is too broad in scope, arguing that the existing TRO[3] has caused Temu to remove *all* their product listings, including non-infringing products, which has disrupted their business operations. The Court agrees with the Opposing Defendants that any preliminary injunction must be strictly limited to the At-Issue Products. The Court, however, can remedy this issue by tailoring the preliminary injunction order appropriately. As such, the Court assigns this alleged harm little to no weight.

The Opposing Defendants also assert that the balance of harms favors denial of the preliminary injunction because SBD's proposed asset freeze is far-reaching. The Court too shares these concerns. Given that the basis for SBD's asset restraint request is disgorgement of *profits* from the At-Issue Products, [14] at 11, SBD is only entitled to a restraint on profits from those products.

In response, SBD argues the Opposing Defendants' argument fails because it is the Opposing Defendants' burden, not SBD's, to present evidence exempting assets from an asset freeze, and the Opposing Defendants have provided insufficient evidence. SBD relies on *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) for this proposition. But *Monster Energy* involved a modification to an existing asset freeze. As noted, there is no official asset freeze in place. Therefore, it is SBD's burden to identify the proceeds it seeks to enjoin with a sufficient degree of

[3]The Court is confused. The TRO expired on March 12, 2026, [26], so technically no restraints should be in place against the Opposing Defendants. Temu may have been unaware of the expiration, but the parties should have informed it. Whose responsibility that was is unclear, though in cases like this the Court generally views notifying third parties of a TRO's expiration as the plaintiff's obligation. Because the Court never requested it, however, it does not fault SBD here. Given that a preliminary injunction will shortly issue, however, any current restraints by Temu shall remain in place until replaced by the preliminary injunction order.

specificity. *WHAM-O Holding, Ltd. et al. v. The Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations Identified in Schedule A*, Case No. 24-CV-12523 (N.D. Ill. Feb. 20, 2025), [42] at 5.

SBD, however, has satisfied this burden. SBD presents evidence that Super Hardware sold 511 units of Super Hardware Products and that Tire Inflation sold 3,416 units of Tire Inflation Products. [58] at 5–6. Multiplied by the respective list prices, those sales yield revenues of $24,752.84 for the Super Hardware Products and $102,616.64 for the Tire Inflation Products. *Id.* The restrained amounts—$15,409.07 of Super Hardware's assets and $8,514.23 of Tire Inflation's—fall well below those figures. *Id.* At this stage, and in the absence of discovery on profit margins, the amount of assets restrained is reasonable.

In sum, while the Opposing Defendants identify harms that would befall them if a preliminary injunction issued, those harms, given the Court's remedies, are not sufficient to outweigh the harm that SBD would suffer absent the preliminary injunction.

### D. Public Interest

The Court finds that a preliminary injunction serves the public interest. SBD has demonstrated a likelihood of confusion from the Opposing Defendants' use of the XR Trademarks, and the Court finds that the public interest would be served by an injunction to prevent such confusion. *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) (finding that "the public interest is served by the injunction because enforcement of the trademark laws prevents consumer confusion."). The

Opposing Defendants' opposition is effectively a repeat of their previous argument: that they will suffer significant harm if an injunction is issued. Putting aside that this is more of a private harm borne by the Opposing Defendants than an effect on the public interest, the Court, for the reasons explained, finds it unpersuasive.

**E. Improper Service and Bond**

Separate from the preliminary injunction requirements, the Opposing Defendants raise two final arguments as to improper service and bond. Neither is persuasive.

As to improper service, the Opposing Defendants assert that because they were not properly served pursuant to the Hague Convention, the preliminary injunction cannot issue. Citing *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co.*, 2022 WL 3365851, at *2 (E.D. Tex. July 15, 2022) and *S.E.C. v. Kimmes*, 753 F. Supp. 695, 700–01 (N.D. Ill. 1990), SBD responds that Rule 65(a) does not require service of process prior to entry of a preliminary injunction, only "notice." Though authority may very well exist that undermines SBD's position, based solely on the cases before the Court, it appears that only "notice" is required. Fed. R. Civ. P. 65(a)(1). As counsel for the Opposing Defendants has appeared [43] and the Opposing Defendants have had an opportunity to oppose the preliminary injunction, the Court believes adequate notice is present. The Opposing Defendants can raise the issue of improper service on a motion to dismiss.

Lastly, the Opposing Defendants contend that the $54,000 bond currently posted by SBD is inadequate to protect them if the injunction were later found improper. Yet they propose no alternative amount and submit no evidence to support one. In the

absence of an alternative proposal, the Court finds that the $54,000 bond, which is proportional to the amount of assets restrained, is appropriate.

## IV. Conclusion

For the stated reasons, SBD's motion for a preliminary injunction [30] is granted with respect to Defendants Super Hardware Factory and Tire Inflation S. By August 26, 2026, SBD shall send a revised preliminary injunction order to the Court with specific language that limits its applicability only to the At-Issue Products. Upon issuance, the revised preliminary injunction shall replace any restraints currently in place from the TRO. As the TRO will be superseded by the preliminary injunction, the Opposing Defendants' motion to dissolve [38] is denied as moot.

E N T E R:

Dated: August 21, 2026

MARY M. ROWLAND
United States District Judge